USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 4, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
                             :

AHMADOU SANKARA,                   :

                             :

                   Plaintiff,      :          15-cv-8470 (KBF)

                             :

                   -v-             :          OPINION & ORDER

                             :

DEPARTMENT OF CORRECTION OFFICER  :

CAPTAIN PLASKETT and DEPARTMENT OF  :

CORRECTION OFFICER LEROY EMERY,    :

                             :

                   Defendants.   :

-----------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

On October 27, 2015, pro se plaintiff Ahmadou Sankara commenced this action under 42 U.S.C. § 1983 alleging that defendants violated his constitutional rights while he was detained at the Anna M. Kross Center ("AMKC") on Riker's Island. (ECF No. 1.) His complaint, liberally construed, asserts claims under the Fourth and Fourteenth Amendments arising from a strip search which he alleges was invasive and unreasonable. (Amended Complaint ("Am. Compl."), ECF. No. 30)

Before the Court is defendants' motion for Summary Judgment. For the reasons discussed below, that motion is GRANTED.

I.     PROCEDURAL AND FACTUAL BACKGROUND

     A.    Procedural History

Plaintiff filed his original complaint on October 27, 2015, asserting 42 U.S.C. § 1983 claims for violations of his First, Fourth, and Fourteenth Amendment rights. (ECF No. 1.) On April 5, 2016, this Court dismissed plaintiff's First Amendment

claims, and, accordingly, the claims against four individual defendants. (ECF No. 14.) Plaintiff amended his complaint several times, most recently on June 30, 2016. (ECF No. 30.) On June 23, 2017, defendants moved for summary judgment. (ECF No. 69.)

B.    Factual Background[1]

The following facts are undisputed and all inferences are drawn in favor of plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Plaintiff is currently an inmate at Mohawk Correctional Facility, a New York state prison. (ECF No. 49.) Previously, and at all times relevant to the present action, plaintiff was detained at the AMKC. (Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1 Statement") ¶ 1, ECF No. 71.)

On August 29, 2015, between 8:00 and 9:00 a.m., plaintiff was escorted to the facility clinic to receive his daily medication. (Id. ¶ 2.) Shortly thereafter, plaintiff and other inmates from his unit were instructed by Captain Plaskett and Officer Emery to proceed to the AMKC gym for a search for contraband. (Id. ¶ 3.)

Once in the gym, the inmates were brought to small "search rooms" for the purpose of conducting a search for contraband.[2] (Id. ¶ 4.) After plaintiff entered the

---

[1] In light of his pro se status, plaintiff's failure to submit a Local Civil Rule 56.1 statement is not fatal to his opposition here. See, e.g., McAllister v. New York City Police Dep't, 49 F. Supp. 2d 688, 693 n.2 (S.D.N.Y. 1999) (noting that "to the extent that [the plaintiff] sets forth facts based upon personal knowledge in his signed briefs, his affidavits and his Rule 56.1 Statement, the Court will consider those facts and will not deem admitted contrary facts in the [defendant's] Rule 56.1 Statement"). However, while the Court does not require the formality of a Rule 56.1 statement, it nevertheless requires plaintiff to contest the facts in some form. The facts as described here are derived from defendants' Rule 56.1 Statement and from plaintiff's complaint and deposition and do not contradict each other.

[2] The search "rooms" were comprised of two panels as walls, no ceiling, and barely large enough for one person. (Defs.' 56.1 Statement ¶ 4.)

search room, Officer Emery asked him to remove his clothing, one article at a time. (Id. ¶ 7.) As each article was removed, Emery searched it thoroughly. (Id. ¶ 9.) Captain Plaskett remained stationed near the entrance to the search area for the purpose of supervising the searches. (Id. ¶ 8.)

When plaintiff was fully undressed, Emery order plaintiff to turn to face the wall, squat, and cough. (Id. ¶ 10.) Plaintiff complied. (Id.) While squatting, plaintiff felt Emery place a gloved finger on plaintiff's rectum for a period of 1-2 seconds. (Id. ¶¶ 11, 12, 13.) Plaintiff jumped up, shouted to Plaskett, and asked Emery why he had touched his rectum. (Id. ¶ 17.) Both Plaskett and Emery responded that Emery was searching for contraband. (Id. ¶ 18, 19.)

After the search concluded, plaintiff put his clothes on, returned to his housing unit, and has had no further interactions with either Plaskett or Emery. (Id. ¶¶ 24, 25.)

## II.   APPLICABLE LEGAL PRINCIPLES

Summary Judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322-23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citing LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005)). Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks, citations, and alterations omitted.) In addition, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks, citations, and alterations omitted).

In reviewing a motion for summary judgment involving a non-moving, pro se plaintiff, this Court "liberally construe[s] [the] pleadings and briefs submitted by the pro se litigant []," "reading such submission to raise the strongest arguments they suggest." Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (quotation marks omitted).

## III. DISCUSSION

Plaintiff asserts: 1) that the strip search was unreasonable under the Fourth Amendment; 2) that the strip search violated his Due Process rights under the

Fourteenth Amendment; and 3) that Captain Plaskett's failure to intervene violated

his rights under the Fourteenth Amendment. For their part, defendants argue that,

as a matter of law, that plaintiff has not raised triable issues of fact as to any claim

or any defendant. In addition, they assert that the facts fully support qualified

immunity from suit. The Court agrees.

A.     Plaintiff's Fourth Amendment Claims

Plaintiff's core claim is that his strip search, including the rectal search, was

unreasonable and in violation of the Fourth Amendment.

1.     Legal Principles

The Fourth Amendment's protection against unreasonable searches extends

to pretrial detainees as well as to prisoners. Bell v. Wolfish, 441 U.S. 520, 545, 559

(1979). Furthermore, inmates retain a limited right to bodily privacy under the

Fourth Amendment. Harris v. Miller, 818 F.3d 49, 57 (2d Cir. 2016). In order to

determine the reasonableness of a strip search, courts must consider "the scope of

the particular intrusion, the manner in which it is conducted, the justification for

initiating it, and the place in which it is conducted." Bell, 441 U.S. at 559.

When motivated by a legitimate penological goal, strip searches have been

found to be reasonable, despite their invasive and highly personal nature. Id. at

558; Covino v. Patrissi, 967 F.2d 73 (2d Cir. 1992). Indeed, whether a prison officer

is searching for contraband is "highly relevant to the reasonableness inquiry."

Harris, 818 F.3d at 62. Even when a search is motivated by a legitimate penological

interest, however, it can become unreasonable where the search is conducted in an

5

abusive manner or in the presence of unnecessary spectators.  Bell, 441 U.S. at 560;

Harris, 818 F.3d at 60, 62.

> 2.    Discussion

Here, while there is no doubt that plaintiff found the strip search to be

invasive, the undisputed facts are that the search was undertaken for legitimate

penological goals.  Indeed, on more than a dozen occasions during his deposition,

plaintiff repeated that he was aware of the purpose of the search, and furthermore

that when he asked defendants what they were doing, they reported that they were

looking for drugs and weapons.  (Sankara Dep., pp. 79, 90, 95, 108, 116, 118, 121,

122, 127, 128, 130, ECF Nos. 70-1, 70-2.)  He further testified that officers routinely

performed such searches and that here, defendants thought that he "was in the

category of those guys hiding drugs."  (Id. at 128.)

Plaintiff proffers no additional facts that might make this type of search,

routinely performed, unreasonable.  Unlike in Harris, where the Second Circuit

remanded the case due to the amount of force used and the fact that the strip search

was performed by a member of the opposite sex, here there are no allegations of

force or other abusive behavior.  Therefore, the Court concludes that there is no

genuine issue of material fact as to whether the search of the plaintiff was

reasonable.

The Court therefore GRANTS defendants' motion for summary judgment on

this claim.

B.    Sexual Assault Claims

Plaintiff further alleges that Officer Emery violated his due process rights by sexually assaulting him. While the Court acknowledges the invasive nature of the search, it also acknowledges the unfortunate realities that make rectal searches sometimes appropriate, as they were here. The facts here leave no doubt that the nature of the contact was not sufficiently serious enough to amount to a constitutional violation.

1.    Legal Principles

Claims of pretrial detainees against state officials are analyzed under the Due Process Clause of the Fifth Amendment made applicable to the states through the Fourteenth Amendment, rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment. Bell, 441 U.S. at 535 n.16; City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).

Traditionally, the analysis of both Eighth and Fourteenth Amendment claims has been identical and required both an objectively serious violation and an inquiry into the officer's subjective state of mind. See, e.g., Caiozzo v. Koreman, 581 F.3d 63, 69, 72 (2d Cir. 2009); Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, the Supreme Court's recent decision in Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015), announced that the "appropriate standard for a pretrial detainee's excessive force claim is solely an objective one."[3] Therefore, a "pretrial detainee can

---

[3] Some courts in this circuit have analyzed sexual abuse claims as conditions of confinement claims. See, e.g., Patterson v. Ponte, No. 16 Civ. 3156, 2017 WL 1194489, at *8 (S.D.N.Y. Mar. 30, 2017) (analyzing sexual abuse claims as conditions of confinement claims, and applying the objective and subjective prongs). This Court believes that this claim is more properly analyzed as an excessive

prevail by providing only objective evidence that the challenged government action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." Id. at 2473-74.

However, the objective prong is context-specific and depends upon the claim at issue. Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015). The Court must take into account the perspective of the officer, as well as the legitimate interests in maintaining a safe facility. Kingsley, 135 S. Ct. at 2474. Not every "malevolent touch by a prison guard gives rise to a federal cause of action," but rather the inquiry will be into whether the conduct is "repugnant to the conscience of mankind." Crawford, 796 F.3d at 256. In determining whether a deprivation is sufficiently serious, "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strep search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." Id. at 258. Furthermore, "prison officials looking for contraband may subject inmates to reasonable strip searches and cavity searches." Id. In fact, "prison security and safety may require frequent searches of an intensely personal nature—and not every such search is properly the subject for a lawsuit." Id.

2.    Discussion

Here, plaintiff has clearly stated that Emery's conduct was performed for a legitimate penological purpose. Furthermore, plaintiff has failed to proffer any facts that suggest that Emery's acts were "repugnant" or "malevolent." In contrast

---

force claim. However, given the fact that the behavior fails to meet the objective standard, under either analysis, plaintiff's claim would fail.

to Crawford, in which the prison official was accused of threatening, using force, and squeezing and fondling the prisoner's genitals, here, plaintiff alleges no personal comments, threats, or indications that the officer was attempting to sexually gratify himself.

Instead, plaintiff describes an orderly, if personally invasive process, whereby Emery methodically checked each item of clothing before asking plaintiff to turn and cough, briefly touching plaintiff's rectum. (Sankara Dep. 109-114.) These undisputed facts are not enough to meet the objective standard required to show a constitutional violation.

As a result, the Court concludes that there are no genuine issues of material fact that suggest that the cavity search, invasive as it was, rose to the level of a constitutional violation under the Fourteenth Amendment.

The Court therefore GRANTS defendants' motion for summary judgment on plaintiff's Fourteenth Amendment claim.

C.    Failure to Intervene

Plaintiff further alleges that Captain Plaskett violated his Fourteenth Amendment rights by failing to intervene. Failure to intervene claims are contingent upon the disposition of the primary claims underlying the failure to intervene claim. See, e.g., Usavage v. Port Auth. of New York and New Jersey, 932 F. Supp. 2d 575, 599 (S.D.N.Y. 2013). As such, since the Court finds that plaintiff has not established a constitutional violation against Emery, the claim against Plaskett necessarily fails.

The Court GRANTS defendants' motion for summary judgment on plaintiff's failure to intervene claim.

### D.    Qualified Immunity

#### 1.    Legal Principles

To determine whether an official is entitled to qualified immunity, courts first look to whether the plaintiffs' allegations, if true, establish a constitutional violation.  Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982).  Next, courts must decide whether it was "objectively reasonable" for the officer to believe that his or her actions were lawful "in light of the legal rules that were clearly established at the time [action] was taken."  Anderson v. Creighton, 483 U.S. 635, 638-39 (1987).

Qualified immunity attaches unless the right plaintiff claims was so clearly established that "it is obvious that no reasonably competent officer would have concluded" that the alleged conduct was constitutionally permissible.  Malley v. Briggs, 475 U.S. 335, 341 (1986).  This is a high bar; qualified immunity "gives ample room for mistaken judgments" and "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  Id.

#### 2.    Discussion

Here, the Court is persuaded that reasonably competent officers would in fact agree that the conduct in question was constitutionally permissible.  While Crawford made clear that even one act of sexual abuse by a corrections officer could give rise to a constitutional violation, it also clearly stated that the principal inquiry in such violations would be "whether the conduct was incidental to legitimate duties, such as a . . . strip search."  Crawford, 796 F.3d at 257.

Reasonable officers would easily conclude, therefore, that the conduct alleged by plaintiff—a 1-2 second touch of the plaintiff's rectum while searching for drugs—would be permissible.

The Court finds that no reasonable jury could find that defendants' actions were "objectively unreasonably in light of clearly established law." <u>Ford v. Moore</u>, 237 F.3d 156, 162 (2d Cir. 2001). As such, the Court finds that the defendants are entitled to qualified immunity.


IV.    CONCLUSION

For the reasons discussed above, defendants' motion for Summary Judgment is GRANTED.

The Clerk of Court is directed to terminate the motion at ECF No. 69 and to terminate the action.

SO ORDERED.

Dated:        New York, New York
              October 3, 2017

_____
        KATHERINE B. FORREST
        United States District Judge